IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEROME NEWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 4475 |
| | ) | |
| APEX FINANCIAL GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Fremont Investment & Loan's

("Fremont") motion to dismiss the claims brought against it in Counts I-IV and on

Defendant Mortgage Electronic Registration Systems, Inc.'s ("MERS") motion to

dismiss the claim in Count IV brought against MERS.  For the reasons stated below,

we deny in part and grant in part Fremont's motion to dismiss and we deny MERS'

motion to dismiss in its entirety.

## BACKGROUND

Plaintiff Jerome Newman ("Newman") alleges that sometime before

November 2006, he contacted Defendant Trevor York ("York"), a mortgage broker,

1

to obtain refinancing.  York is allegedly employed by Defendant Apex Financial

Group, Inc. ("Apex").  Newman contends that Apex filled out and submitted a loan

application on behalf of Newman to Fremont, which is allegedly in the business of

originating mortgages.  Fremont allegedly originated a loan ("Loan") to Newman and

his mother in the amount of $205,000.  According to Newman, some of the Loan

proceeds were withheld to pay back taxes.  Four days after the closing on the

mortgage, York allegedly sent Newman a check for loan proceeds in the amount of

$3,385.66.  Newman allegedly complained to York that Newman had not received

the correct amount and $6,908.73 was subsequently refunded to Newman.  Newman

claims that despite the explanations for the diversion of Loan funds, Apex did not

account for $42,701.06 that was directed to York.  When Newman questioned York

about the $42,701.06, York allegedly claimed that the amount was his payment for

"cleaning up" Newman's credit and Newman's wife's credit.  (A. Compl. Par 28).

Newman claims that York actually provided no services other than acting as a

mortgage broker.  Newman also claims that there are other sums from the Loan

proceeds that are not properly accounted for in the loan statements from Apex.

Newman alleges that the sums received by Apex for brokerage services was more

than reasonable compensation for such services.  Newman also claims that Apex

targets minority borrowers and assigns higher rates to minority borrowers than non-

minority borrowers, regardless of the borrowers' qualifications.

Newman brought the instant action and includes in the amended complaint a claim alleging unlawful discrimination in regard to residential real estate-related transactions in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, brought against Fremont and Apex (Count I), a claim alleging unlawful discrimination in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, brought against Fremont and Apex (Count II), an Illinois Consumer Fraud and Deceptive Business Practices Act, ("Consumer Fraud Act"), 815 ILCS 505/1 *et seq.*, claim brought against Apex, Fremont, and York (Count III), a Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.,* claim brought against Fremont, Defendant Wells Fargo Bank, N.A. ("Wells") and MERS, (Count IV), a Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.*, claim brought against York and Apex (Count V), a breach of fiduciary duty claim brought against Apex, York and Defendant Tristar Title, LLC (Count VI), and a common law fraud claim brought against Apex and York (Count VII). Fremont now moves to dismiss the claims brought against it in Counts I-IV and MERS moves to dismiss the claim in Count IV brought against it.

**LEGAL STANDARD**

In ruling on a motion to dismiss, brought pursuant to Federal Rule of Civil

Procedure 12(b)(6), the court must draw all reasonable inferences that favor the

plaintiff, construe the allegations of the complaint in the light most favorable to the

plaintiff, and accept as true all well-pleaded facts and allegations in the complaint.

*Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002);

*Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). In order to withstand a

motion to dismiss, a complaint must allege the "operative facts" upon which each

claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998);

*Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff is required to

include allegations in the complaint that "plausibly suggest that the plaintiff has a

right to relief, raising that possibility above a 'speculative level'" and "if they do not,

the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*,

496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly,*

127 S.Ct. 1955, 1965 (2007)). Under current notice pleading standard in federal

courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause

of action. . . .'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d

247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit

of imagination, so long as the hypotheses are consistent with the complaint" and that

"[m]atching facts against legal elements comes later"). The plaintiff need not allege

all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*,

286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any

conclusions pled must "'provide the defendant with at least minimal notice of the

claim,'" *Kyle*, 144 F.3d at 455 (quoting *Jackson v. Marion County*, 66 F.3d 151, 153-

54 (7th Cir. 1995)), and the plaintiff cannot satisfy federal pleading requirements

merely "by attaching bare legal conclusions to narrated facts which fail to outline the

bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has

explained that "[o]ne pleads a 'claim for relief' by briefly describing the events."

*Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir.

1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to

set out a claim for relief").


## DISCUSSION

Fremont and MERS (collectively referred to as "Defendants") argue that

Newman has not alleged sufficient facts to state an ECOA or a FHA claim under the

notice pleading standard (Counts I and II). Defendants also argue that Newman has

not pled the Consumer Fraud Act with particularity (Count III). Finally, Defendants

argue that Newman cannot proceed on the TILA claim since the Loan was not made

for personal, family, or household use and that MERS is not a proper Defendant for

the TILA claim (Count IV).

I.  Fair Housing Act Claims (Count I)

Defendants argue that Newman has not pled sufficient factual details to state a FHA claim.  Pursuant to 42 U.S.C. § 3605 of the FHA, "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin."  42 U.S.C. § 3605(a).

Defendants argue that in pleading the FHA claim Newman "leaps to . . . unsupported conclusions. . . ."  (Mem. Dis. 7)(emphasis omitted).  However, in pleading a claim at the motion to dismiss stage Newman is not required to support his facts with evidence.  Newman unequivocally states in the amended complaint that Fremont's payment and Apex's receipt of yield spread premiums ("YSP") "disproportionately adversely effects minority borrowers such as plaintiff."  (A. Compl. Par. 46).  Newman further alleges that Apex, "on average, subjected plaintiff and other minority borrowers to more frequent and/or larger YSPs due to their race." (A. Compl. Par. 46).  We are required to interpret the allegations in favor of Newman

at this juncture.  Newman has alleged that Defendants discriminate against borrowers because of their race.  Newman also includes other allegations such as that the resulting disproportionate impact on minorities "was known and intended by [D]efendants."  (A. Compl. Par. 48).  Newman alleges that Defendants "assign higher interest rates to minorities, including [Newman], than to whites, regardless of qualifications."  (A. Compl. Par. 46).  Newman further alleges that Defendants "intentionally and disproportionately target African-Americans and other minorities for higher cost loans, regardless of their qualifications."  (A. Compl. Par. 54). Newman contends that Defendants are able to target minorities since Apex "knows who its likely customers are, including where they live, their general credit profile and their race or ethnicity" and Fremont "knows who brokers are, including the geographical communities in which they conduct marketing and broker loans as well as the racial or ethnic composition of the pool of brokers' customers."  (A. Compl. Par. 53).

Defendants, deny the truth of Newman's allegations and explain how they did not engage in unlawful discrimination and how the YSPs that Apex utilizes actually "foster home ownership."  (Reply 12).  However, we cannot resolve such factual issues at the motion to dismiss stage.  Such arguments are more appropriate at the summary judgment stage.  Defendants argue that the recent ruling in *Bell Atlantic*

*Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007) requires Newman to substantiate his

claims.  (Mem. Dis. 6-7).  However, in neither *Twombly* or *E.E.O.C. v. Concentra*

*Health Services, Inc.*, 496 F.3d 773 (7th Cir. 2007), in which the Seventh Circuit

interpreted *Twombly*, *id.* at 776, did the Courts overturn the rule that the allegations

that are included in the complaint must still be accepted as true and that all well pled

facts are construed in favor of the plaintiff.  In *Concentra*, the Court held that a

plaintiff fails to state a claim if the allegations are so vague that they appear to be

based on pure speculation.  496 F.3d at 776.  The Seventh Circuit has not held, as

Defendants propose, that a court can speculate at the pleadings stage whether a

plaintiff will be able to find sufficient evidence to support his claims.  The

speculation referred to in *Concentra* exists when there is an absence of specific facts

in the complaint that could "plausibly suggest that the plaintiff has a right to relief. . .

." *Id.*

In the instant action, Newman provides sufficient facts that suggest the

possibility that Defendants discriminated against minorities.  Newman contends that

he is a minority borrower that was charged an unreasonably higher rate that was not

based on his qualifications.  Newman also contends that Defendants assigned higher

rates to minority borrowers than to non-minority borrowers, regardless of the

borrowers' qualifications.  Such facts, if accepted as true, may indicate unlawful

discrimination.

All of Defendants' arguments that the amended complaint contains "unfounded discrimination claims," (Mem. Dis. 11), go to the merits of the claims, which is not a proper inquiry at the motion to dismiss stage. Whether or not Defendants charged minority borrowers higher rates, or whether Defendants can come forth with legitimate business reasons to justify the rates at issue, or whether Defendants' rates actually encourage home ownership are not matters that can be addressed at the motion to dismiss stage. At the motion to dismiss stage a court must assess whether a plaintiff has stated a valid claim, rather than assess the merits of the plaintiff's allegations.

Defendants also incorrectly assert that *Twombly* holds that a plaintiff must plead the elements of a claim. (Mem. Dis . 10). As indicated above, under the federal notice pleading standard, a plaintiff is required to provide adequate notice to a defendant of the claims being brought. *Sanjuan*, 40 F.3d at 251. Nowhere in *Twombly* or in *Concentra*, interpreting *Twombly*, did either Court state that a plaintiff in federal court must plead facts to match up with each element of a claim in order to state a claim, and in fact the Seventh Circuit in *Concentra* made it clear that a plaintiff need not plead an exhaustive list of facts to state a valid claim, stating that "[m]ost details are more efficiently learned through the flexible discovery process."

*Concentra Health Servs., Inc.*, 496 F.3d at 779.

Defendants also argue that, in light of *Twombly*, the court should dismiss the FHA claim since Newman will "bear[] an immense burden of proof" and Defendants' business operations will be disrupted by discovery in this action. (Mem. Dis. 12). However, nowhere in *Twombly* or in *Concentra*, did either Court alter controlling precedent and Federal Rules of Civil Procedure which instruct courts to inquire as to whether a plaintiff has stated a valid claim at the motion to dismiss stage and subsequently at the summary judgment stage assess whether, in light of the evidence, a party can prevail at law. The Court in *Concentra* made it clear that, although the pleading standard is more restrictive, the overall civil procedure remains the same, stating that detailed factual pleading is not required and "a plaintiff might sometimes have a right to relief without knowing every factual detail supporting its right; requiring the plaintiff to plead those unknown details before discovery would improperly deny the plaintiff the opportunity to prove its claim." *Id.* at 780. Therefore, we deny the motion to dismiss the FHA claims (Count I).

## II. Equal Credit Opportunity Act Claims (Count II)

Defendants argue that Newman has not pled sufficient factual details to state an ECOA claim. Pursuant to 15 U.S.C. § 1691 of ECOA, "[i]t shall be unlawful for

any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract). . . ." 15 U.S.C. § 1691(a). As indicated above in regard to the FHA claim, Newman has provided sufficient facts in the complaint to adequately provide Defendants with notice of the allegations of discrimination. Defendants' arguments that Newman's claims are without merit are more appropriate at the summary judgment stage. Thus, Defendants' arguments are premature and we deny the motion to dismiss the ECOA claims (Count II).

III. Consumer Fraud Act Claim (Count III)

Defendants argue that Newman has not pled the Consumer Fraud Act claim with specificity. Pursuant to Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), a plaintiff is required to plead fraud-based claims with particularity. Fed. R. Civ. P. 9(b). The particularity requirement "applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Newman contends that he has not pled a deceptive conduct-based claim and instead intended to plead unfair conduct-based claims. *See Robinson v. Toyota Motor Credit*

*Corp.*, 775 N.E.2d 951, 960-61 (Ill. 2002)(indicating that a plaintiff can recover

under the Consumer Fraud Act for "unfair as well as deceptive conduct").  Newman

contends that his unfair conduct-based claims are not based on fraudulent conduct.

Although Newman now indicates that he is not bringing a fraud-based claim,

the allegations in the amended complaint clearly indicate otherwise.  Newman

alleges that Apex, Fremont, and Trevor "engaged in deceptive and unfair practices"

in violation of the Consumer Fraud Act.  (A. Compl. Par. 84).  Newman also alleges

as part of the allegations that are specifically tied to his Consumer Fraud Act claims

that Apex, Fremont and Trevor violated the act by "[k]nowingly and fraudulently

imposing, disguising and pocketing plaintiff's loan proceeds in the amount of

$42,701.06," and by "[m]isrepresenting the finance charge, amount financed and

annual percentage rate by failing to include the additional $42,701.06 in broker

compensation and points and fees."  (A. Compl. Par. 84(b)(d)).  Newman further

alleges that Apex, Fremont, and Trevor concealed facts about the Loan from

Newman and engaged in such conduct to "induce" Newman to enter into the Loan.

(A. Compl. Par. 86, 88).  Such allegations clearly allege deceptive and fraudulent

practices rather than practices that may simply prove to be unfair.  Thus, regardless

of whether Newman attempts to depict his Consumer Fraud Act claim as a deceptive

acts claims or unfair acts claim, they are premised upon allegations of concealment,

misrepresentation, and fraud and Rule 9(b) applies to such claims. *See Borsellino*, 477 F.3d at 507 (stating that "[a] claim that 'sounds in fraud'-in other words, one that is premised upon a course of fraudulent conduct-can implicate Rule 9(b)'s heightened pleading requirements").

In order to plead a fraud-based claim with particularity, a plaintiff "must provide 'the who, what, when, where, and how.'" *Borsellino*, 477 F.3d at 507 (quoting in part *United States v. AIDS Research Alliance-Chicago,* 415 F.3d 601, 605 (7th Cir. 2005)). Although the allegations concerning Defendants' improprieties in regard to the Loan are sufficient in general to state valid claims for the other counts in the amended complaint, the allegations do not include the specificity required under Rule 9(b) for a fraud-based claim. Newman has not provided specific facts concerning how the fraud was perpetrated. Nor has he provided exact details when the alleged fraud occurred. Therefore, we grant the motion to dismiss the Consumer Fraud Act claim brought against Fremont (Count III).


IV.  Truth in Lending Act Claims (Count IV)

Defendants argue that TILA does not apply to the Loan since the Loan was obtained for commercial use. Defendants also argue that MERS is not a proper Defendant for the TILA claim.

A.  Commercial Aspects of Loan

Defendants argue that Newman cannot proceed on the TILA claim since the Loan was not made for personal, family, or household use.  TILA provides that certain transactions are exempted from the TILA protections, including "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or to government or governmental agencies or instrumentalities, or to organizations."  15 U.S.C. § 1603(1).  Defendants contend that the Loan at issue involved commercial matters and is not covered by TILA.  However, Newman does not allege in the amended complaint that the Loan involved commercial matters.  That is a fact outside the scope of the allegations in the amended complaint, which are pertinent to assess whether Newman has stated a valid claim.  We also note that Newman, in response to the motion to dismiss, actually asserts that the Loan was for personal and family use.  (Ans. F. 16-17).  It is not proper to address such factual disputes at the motion to dismiss stage.  We can only determine at this juncture whether, when accepting Newman's allegations as true, Newman has stated a valid TILA claim.  We find that Newman has stated a valid TILA claim and therefore, we deny the motion to dismiss the TILA claim brought against Fremont (Count IV).

B.  Propriety of MERS as a Defendant

Defendants also argue that MERS is not a proper Defendant for the TILA

claim.  Newman alleges in the amended complaint that MERS "holds title to the

mortgage that resulted from the" Loan transaction.  (A. Compl. Par. 10).  Newman

also states that MERS "is a party necessary to be joined if feasible."  (A. Compl. Par.

10).  Pursuant to Federal Rule of Civil Procedure 19(a), "[a] person who is subject to

service of process and whose joinder will not deprive the court of subject-matter

jurisdiction must be joined as a party if: (A) in that person's absence, the court

cannot accord complete relief among existing parties; or (B) that person claims an

interest relating to the subject of the action and is so situated that disposing of the

action in the person's absence may: (I) as a practical matter impair or impede the

person's ability to protect the interest; or (ii) leave an existing party subject to a

substantial risk of incurring double, multiple, or otherwise inconsistent obligations

because of the interest."  Fed. R. Civ. P. 19(a).

MERS argues that a TILA claim can only be brought against a creditor of the

plaintiff or an assignee of the creditor.  MERS contends that the complaint merely

alleges that MERS holds title to the mortgage and is neither a creditor or an assignee

of a creditor of Newman.  However, MERS does not dispute Newman's contention

that MERS, as the holder of the title of the mortgage, has the ability to exercise

certain rights such as the right to initiate foreclosure actions under the terms of the Loan and mortgage.  The exercise of such a right would necessarily interfere with the instant proceedings and any ruling on the issue presented in these proceedings would in turn impact MERS' rights.  In addition, Newman can acquire complete relief only with the inclusion of MERS.  Foreclosure proceedings would interfere with a potential recision of the mortgage agreement that could be awarded as relief to Newman if he prevailed on the TILA claim.  MERS has not challenged Newman's position concerning the interest and rights that MERS has in regard to the mortgage at issue in this case or explained why MERS should not necessarily be joined in this action.  Thus, based upon the record at this juncture we find that MERS is properly joined as a Defendant.   Therefore, we deny the motion to dismiss the claim brought in Count IV against MERS.

## CONCLUSION

Based on the foregoing analysis, we deny Fremont's motion to dismiss the claims brought against Fremont in Counts I, II, and IV, and we grant the motion to

dismiss the claim brought against Fremont in Count III.  We also deny MERS'

motion to dismiss in its entirety.


_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated:   January 11, 2008